UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TOM LEE, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 17-6547 |
| NACHER CORPORATION, ET AL., | SECTION: "E" (1) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by Defendant the Nacher Corporation ("Nacher").[1] For the reasons that follow, the motion is **GRANTED**. The Court **DENIES AS MOOT** Nacher's motion for summary judgment as to the McCorpen Defense and Medical Causation.[2]

## BACKGROUND

Plaintiff alleges that, on or about July 16, 2014, he was injured while working on a structure he refers to as the "McMoran Exploration Oil Rig #251."[3] On July 7, 2017, Plaintiff filed suit against Nacher, which was his employer, and against McMoRan Exploration, LLC, McMoRan Exploration Co., and Freeport-McMoRan Exploration and Production, LLC, which he alleges own the structure.[4] Plaintiff alleges he was a seaman working on a vessel and asserts causes of action for negligence and negligence per se under the Jones Act, maintenance and cure, lost wages, and unseaworthiness.[5]

On August 6, 2018, Nacher filed the instant motion arguing there are no material facts in dispute, and Plaintiff was not a Jones Act seaman as a matter of law because he

---

[1] R. Doc. 35.
[2] R. Doc. 64.
[3] R. Doc. 1 at 3–4.
[4] *Id.*
[5] *Id.*

1

spent less than 30% of his time working for Nacher on a vessel or an identifiable fleet of vessels.[6] Plaintiff opposes, contending he spent more than 30% of his time working for Nacher on a vessel.[7]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "An issue is material if its resolution could affect the outcome of the action."[9] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[10] All reasonable inferences are drawn in favor of the non-moving party.[11] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[12]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the

---

[6] R. Doc. 35.
[7] R. Docs. 46, 50.
[8] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[9] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[10] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[11] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[12] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[13]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[14] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[15] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[16] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[13] *Celotex*, 477 U.S. at 322–24.
[14] *Id.* at 331–32 (Brennan, J., dissenting).
[15] *See id.* at 332.
[16] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

3

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[17]

## **SEAMAN STATUS**

A plaintiff is a Jones Act seaman if: (1) his "duties contribute[d] to the function of the vessel or the accomplishment of its mission," and (2) he has "a connection to a vessel (or an identifiable fleet of vessels in navigation) that is substantial in terms of both its duration and nature."[18] A plaintiff bears the burden of proving seaman status.[19] Although the determination of seaman status is a mixed question of law and fact, summary judgment is appropriate when "the facts and the law will reasonably support only one conclusion."[20]

The Fifth Circuit has set forth "an appropriate rule of thumb" for determining whether an employee has a substantial connection to a vessel in navigation.[21] If a worker spends less than thirty percent of his time in the service of a vessel, he is not a seaman.[22] This determination is made "'in the context of [the employee's] entire employment' with his current employer."[23]

---

[17] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[18] *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (citing *id.* at 355–58).
[19] *Barrett v. Chevron, U.S.A., Inc.*, 752 F.2d 129, 132 (5th Cir. 1985).
[20] *Harbor Tug*, 520 U.S. at 554 (internal quotation marks omitted); *see also Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995).
[21] *Becker v. Tidewater, Inc.*, 355 F.3d 376, 377 (5th 2003).
[22] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 367 (1995) ("[T]he Fifth Circuit consistently has analyzed the problem in terms of the percentage of work performed on vessels for the employer in question—and has declined to find seaman status where the employee spent less than 30 percent of his time aboard ship.") (citing *Palmer v. Fayard Moving & Transp. Corp.*, 930 F.2d 437, 439 (5th Cir. 1991); *Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 295 (5th Cir. 1987); *Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237, 1240 (5th Cir. 1986)).
[23] *Barrett*, 781 F.2d at 1075 (citing *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1347 (5th Cir.1980)). "This is not an inflexible requirement, however, and does not preclude assessment of the extent of the employee's work aboard a vessel over a shorter time period if the employee's permanent job assignment during his term of employment has changed." *Id.* In this case, there is no evidence Plaintiff's permanent job assignment changed after the beginning of his employment with Nacher but before the alleged accident.

## ANALYSIS

**I.     There is no genuine issue of material fact that the platforms located in High Island Blocks 531-A and 474 in the Gulf of Mexico are stationary platforms.**

Nacher states it is an undisputed fact the platforms located in High Island Blocks 531-A and 474 are stationary platforms,[24] and attaches the results of a Bureau of Ocean Energy Management ("BOEM") Platform Structures Online Query listing the "Struc Type Code" as "FIXED."[25] Lee disputes whether the platforms located in High Island Blocks 531-A and 474 in the Gulf of Mexico, on which Lee worked for Nacher, are stationary platforms.[26] "Fixed off-shore platforms are not vessels."[27] Accordingly, this factual dispute is material to determining Lee's status as a seaman because it bears on whether the time Lee spent on the platforms located in High Island Blocks 531-A and 474 is considered time spent on board a vessel.

The Court takes judicial notice of the "Field Definitions" section of the BOEM Platform Structures Online Query website,[28] which explains a "Struc Type Code" of "FIXED" means the structures are "fixed legged platforms."[29] Nacher has satisfied its

---

[24] R. Doc. 35-15 at 3, ¶ 11.
[25] R. Doc. 35-7 at 1, R. Doc. 35-8 at 1. Courts have relied on this database for information about platform structures. *See, e.g.*, *Mata v. Freeport McMoran Inc.*, No. 3:15-CV-00155, 2016 WL 6037237, at *7 n.5 (S.D. Tex. Oct. 14, 2016); *Lewis v. Helmerich & Payne Int'l Drilling Co.*, No. CIVA. 13-5994, 2015 WL 1040458, at *4 (E.D. La. Mar. 10, 2015) (Fallon, J.); *Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*, No. CIV.A. 13-3935, 2014 WL 6638793, at *3 (E.D. La. Nov. 21, 2014) (Vance, J.).
[26] R. Doc. 35-15 at 3, ¶ 11; R. Doc. 50-7 at 2, ¶ 11.
[27] *Nolan v. Coating Specialists, Inc.*, 422 F.2d 377, 379 (5th Cir. 1970).
[28] FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Courts have taken judicial notice of online information from the BOEM. *See, e.g.*, *Galloway v. Nabors Offshore Corp.*, No. CIV.A. H-14-2029, 2015 WL 269210, at *3 (S.D. Tex. Jan. 21, 2015); *Rooster Petroleum, LLC v. Fairways Offshore Expl., Inc.*, No. CIV.A. 12-1322, 2013 WL 6274375, at *7 n.4 (E.D. La. Dec. 4, 2013) (Fallon, J.).
[29] *Platform Structures Online Query Field Definitions*, BUREAU OF OCEAN ENERGY MGMT., https://www.data.boem.gov/Platform/PlatformStructures/FieldDefinitions.aspx. This Internet source has been preserved on the Court's website under "Orders Citing Internet Sources.

burden of submitting affirmative evidence the platforms located in High Island Blocks 531-A and 474 are fixed, stationary platforms, not vessels.

The burden of production shifts to Plaintiff to direct the Court's attention to evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[30] Plaintiff denies the structures are fixed platforms and states he "can present evidence showing HI-Block 531-A and 474 are not fixed stationary platforms."[31] However, he attaches to his motion only the same BOEM online query results listing the structures as fixed.[32] This is insufficient to meet his burden of showing a genuine issue of fact as to whether the platforms are fixed.

Moreover, in Plaintiff's own calculation of the time he spent working on board a vessel, he does not include the time he spent working on the platforms located in High Island Blocks 531-A and 474 as time he spent working on a vessel.[33] He argues he can show he spent "less than 264 hours on land or on fixed platforms," basing the 264 hours on the time he admits to working on the platforms located in High Island Blocks 531-A and 474.[34] Nowhere does Plaintiff argue that the time he worked on platforms located in High Island Blocks 531-A and 474 should be considered time he spent working on a vessel. The Court finds there is no genuine issue of material fact that the platforms located in High Island Blocks 474 and 531-A are stationary platforms and not vessels for purposes of determining Lee's status as a seaman.

---

[30] *Celotex*, 477 U.S. at 322–24.
[31] R. Doc. 50-7 at 2, ¶ 11.
[32] R. Doc. 50-4 at 2, R. Doc. 50-6 at 2.
[33] R. Doc. 50-1 at 4.
[34] R. Doc. 50-7 at 1–2, ¶¶ 3, 5, 7.

**II. Because Plaintiff spent less than 30% of his employment with Nacher in the service of a vessel, he was not a Jones Act seaman.**

As to how many hours Lee spent working on vessels, the following facts are not in dispute. Plaintiff worked for Nacher for a total of 387 hours.[35] Upon being hired, he underwent 16 hours of training on land on May 22, 2014 and May 23, 2014.[36] He then worked on the Noble Drilling Rig, DANNY ADKINS, for 87 hours.[37] Between July 7, 2015 and July 19, 2014, Plaintiff worked for 164 hours on the platform located in High Island Block 531-A.[38]

The parties dispute how many hours Plaintiff worked on the platform located in High Island Block 474. Based on work logs attached to the instant motion,[39] Nacher states it is undisputed Plaintiff worked on the platform located in High Island Block 474 for 120 hours between June 20, 2014 and June 28, 2014.[40] Plaintiff admits he worked on the platform located in High Island Block 474 for 84 hours, but states he spent 18 hours on a transport vessel en route to High Island Block 474 and 18 hours "on and off" the transport vessel, moving equipment from the transport vessel to the platform located in High Island Block 474.[41] In support, Plaintiff attaches the same work logs attached to Nacher's motion.[42]

In summary, it is undisputed Plaintiff spent a total of 264 hours,[43] or 68% of his 387-hour total employment with Nacher, working either on land or on a stationary

---

[35] R. Doc. 35-15 at 2, ¶ 7; R. Doc. 50-7 at 2, ¶ 7.
[36] R. Doc. 35-15 at 1, ¶ 1; R. Doc. 50-7 at 1, ¶ 1.
[37] R. Doc. 35-15 at 1, ¶ 2; R. Doc. 50-7 at 1, ¶ 2.
[38] R. Doc. 35-15 at 2, ¶ 5; R. Doc. 50-7 at 2, ¶ 5.
[39] R. Doc. 35-5.
[40] R. Doc. 35-15 at 1, ¶ 3.
[41] R. Doc. 50-7 at 1, ¶ 3.
[42] R. Doc. 50-3.
[43] This is the sum of the 16 hours he trained on land, the 84 hours Plaintiff admits he worked on High Island Block 474, and the 164 hours he worked on High Island Block 531-A. Stationary platforms are not vessels

platform. It is undisputed he spent 87 hours,[44] or 22% of his total employment with Nacher, working on a vessel. The dispute arises from Plaintiff's argument that the 18 hours, or 5% of the total, he spent being transported to a stationary platform, and the 18 hours, or the final 5%, he spent unloading a vessel at a stationary platform should be considered time spent working on a vessel.[45] If Plaintiff is correct, he would have spent 123 hours, or 32% of his total employment with Nacher, in service of a vessel, and Nacher would not be entitled to judgment as a matter of law that he is not a seaman.

Time that platform workers spend on transport vessels going to and from a stationary platform is not considered time spent in service of a vessel.[46] In *Munguia v. Chevron Co., U.S.A.*, the Fifth Circuit held a platform worker who frequently used boats to travel to the platforms where he worked was not a seaman because "[t]he various boats were merely a means of transportation. They constituted in effect a boat pool, a nautical motor pool, from which [the plaintiff] daily selected or was assigned a boat to enable him to transport himself and his equipment to the various places where his pumping, gauging, or other platform work was to be done."[47]

---

for purposes of seaman status. *See Kimble v. Noble Drilling Corp.*, 416 F.2d 847, 848 n.1 (5th Cir. 1969) (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969)).
[44] This is the time Plaintiff worked on the Noble Drilling Rig, DANNY ADKINS. Drilling rigs are vessels for purposes of seaman status. *See Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554, 556 (5th Cir. 1987).
[45] R. Doc. 50-7 at 1, ¶ 3.
[46] *See Munguia v. Chevron Co., U.S.A.*, 768 F.2d 649, 653 (5th Cir. 1985); *Barrios v. Engine & Gas Compressor Servs., Inc.*, 669 F.2d 350, 353 (5th Cir. 1982) ("[Plaintiff] further argues that . . . he was nonetheless a seaman because he regularly rode from platform to platform on crewboats and 'performed a substantial amount of work' on the crewboats that 'contributed to the function of the vessels.' However, there is no showing that [plaintiff's] work aboard them was other than transitory and incidental to his employment as a mechanic on the compressor stations."); *Stanley v. Guy Scroggins Constr. Co.*, 297 F.2d 374, 377 (5th Cir. 1961) (explaining that an individual who "merely receives transportation" on vessels is not a seaman); *Borne v. Vintage Petroleum, Inc.*, 949 F.Supp. 492, 493–94 (S.D. Tex. 1996) ("The record shows that Plaintiff often took a vessel out to wells or platforms to perform his job duties. The fact that he used a boat to get to job sites does not qualify him as being assigned to a vessel or a fleet of vessels. The boats Plaintiff used were merely a means of transportation, a 'nautical motor pool,' to the sites where he performed his true job duties.");
[47] 768 F.2d at 653.

Lee spent 18 hours on a vessel being transported to the stationary platform located in High Island Block 474. As a matter of law, these hours, which constituted 5% of his total employment with Nacher, are not considered time spent in the service of the vessel for purposes of determining seaman status. The transport vessel was merely part of a nautical motor pool enabling Plaintiff to be transported to the platform where he was to work. Because Plaintiff's time being transported to the platform is not time spent in service of a vessel, these hours cannot be counted toward the required 30% of time spent in the service of a vessel.

Lee spent 18 hours "on and off" the transport vessel, moving equipment from the vessel to High Island Block 474.[48] Time spent performing work related to a stationary platform, even if technically on board a vessel, is not considered time spent in service of that vessel.[49] In *Hufnagel v. Omega Serv. Ind., Inc.*, the plaintiff repaired offshore oil and gas platforms and sometimes ate or slept on vessels that served as floating "hotels."[50] (5th Cir. 1999). The Fifth Circuit held he was not a Jones Act seaman because his "duties involved platform work, and were not related to the navigation, maintenance, or voyage of the [vessel, and his] sole purpose for being present on the platform or the [vessel] related to the repair of the platform."[51]

Similar to the plaintiff in *Hufnagel*, Lee's sole purpose for being present on the vessel related to his work on the stationary platform. As a matter of law, these 18 hours,

---

[48] R. Doc. 50-7 at 1, ¶ 3.
[49] *See Butcher v. Superior Offshore*, 357 Fed. App'x 619, 620 (5th Cir. 2009) ("[Plaintiff] worked thirty percent of his time on board the vessel but this included time spent for meals and breaks, which does not make [plaintiff] a seaman."); *Hufnagel v. Omega Serv. Ind., Inc.*, 182 F.3d 340, 344–45 (5th Cir. 1999); *Pearson v. Offshore Specialty Fabricators, Inc.*, No. CIV. A. 91-3350, 1992 WL 300826, at *2–*3 (E.D. La. Oct. 8, 1992) (finding a plaintiff tasked with sandblasting and painting a platform was not a seaman because his time on a vessel attached to the platform did not contribute to the vessel's mission of providing sleeping and eating quarters to people working on the platform).
[50] 182 F.3d at 344–45.
[51] *Id.* at 346.

which constituted 5% of his total employment with Nacher, are not considered time spent in the service of the vessel for purposes of determining seaman status. As a result, Plaintiff cannot show he spent 30% of his total employment with Nacher working on a vessel for purposes of establishing seaman status. Because Plaintiff spent less than thirty percent of his time in the service of a vessel, "the facts and the law will reasonably support only one conclusion,"[52] that Plaintiff was not a Jones Act seaman.

### III. Nacher is entitled to judgment as a matter of law on all of Plaintiff's claims against it.

#### A. Counts 1 and 2

Plaintiff brings Count 1 of his Complaint against Nacher for negligence under the Jones Act.[53] Plaintiff brings Count 2 of his Complaint against Nacher for negligence per se under the Jones Act.[54] "The Jones Act provides a cause of action for 'any seaman' injured 'in the course of his employment.'"[55] Because Plaintiff is not a Jones Act seaman, Nacher is entitled to judgment as a matter of law on Plaintiff's Jones Act negligence and negligence per se claims against it.

#### B. Count 3

Plaintiff brings a portion of his claims under Count 3 for maintenance and cure under general maritime law.[56] "Only seamen are entitled to the benefits of maintenance and cure [under general maritime law]. The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining

---

[52] *Harbor Tug*, 520 U.S. at 554 (internal quotation marks omitted); *see also Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995).
[53] R. Doc. 1 at 3–5.
[54] *Id.*
[55] *Chandris*, 515 U.S. at 354 (quoting 46 U.S.C. § 688(a), *subsequently recodified at* 46 U.S.C. § 30104).
[56] R. Doc. 1 at 6.

[seaman] status under the Jones Act."[57] Because Plaintiff is not a Jones Act seaman, Nacher is entitled to judgment as a matter of law on Plaintiff's claim for maintenance and cure under general maritime law in Count 3.

Plaintiff also brings a claim for lost wages under general maritime law under Count 3.[58] "Maintenance, cure and unearned wages are available to seamen who fall ill or are injured while in service of a ship."[59] Because Plaintiff is not a seaman, he is not entitled to lost wages under general maritime law. Nacher also is entitled to judgment as a matter of law on Plaintiff's claim for lost wages under general maritime law in Count 3.

Plaintiff also brings a claim for unseaworthiness of the vessel under Count 3.[60] A shipowner has an absolute duty to provide a seaworthy vessel.[61] "As a general rule, the vessel owner is the proper defendant for an unseaworthiness claim."[62] It is undisputed

---

[57] *Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984); *see also Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).
[58] R. Doc. 1 at 6. *See Smith v. Atlas Off-Shore Boat Serv., Inc.*, 653 F.2d 1057, 1060 n.2 (5th Cir. 1981) ("A seaman who has been wrongfully discharged may bring suit for the recovery of wages which he would have earned had the shipping contract been fulfilled.").
[59] *Primozich v. Oczkewicz*, No. C16-82 BJR, 2017 WL 77518, at *6 (W.D. Wash. Jan. 9, 2017) (citation and internal quotations omitted); *see also Gims v. Danos & Curole Marine Contractors, Inc.*, No. CIV.A. 99-185, 1999 WL 983826 (E.D. La. Oct. 28, 1999) (Vance, J.) (entering judgment on claim for lost wages, among others, because the plaintiff was not a seaman); *Alier v. Sea Land Serv., Inc.*, 465 F. Supp. 1106, 1110–11 (D.P.R. 1979) ("These wages, unearned or honorary, as they may be called, are in the nature of maintenance and cure, and it is the ancient duty of the vessel and shipowner to provide the sick and injured seaman with said maintenance and cure and honorary wages from the contract of employment and the particular relationship existing *1111 between the seaman and his vessel."); *cf. Dowdle v. Offshore Exp., Inc.*, 809 F.2d 259, 263 (5th Cir. 1987) ("[T]he seaman's rights to unearned wages are not separable from maintenance and cure."); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6:29 (6th ed. 2018) ("The right to unearned wages is correlative to the right to maintenance and cure; thus the seaman will be awarded all three or none at all.").
[60] R. Doc. 1 at 6.
[61] *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960).
[62] *Coakley v. SeaRiver Mar., Inc.*, 319 F. Supp. 2d 712, 715 (E.D. La. 2004), *aff'd,* 143 F. App'x 565 (5th Cir. 2005) (citing *Chandris*, 515 U.S. at 371); *see also Daniels v. Fla. Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963) ("The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel."); *Woods v. Seadrill Americas, Inc.*, No. CV 16-15405, 2017 WL 4269553, at *2 (E.D. La. Sept. 26, 2017) (granting summary judgment in favor of an employer on an unseaworthiness claim because the employer did not own the vessel); *Fluker v. Manson Gulf, LLC*, 193 F. Supp. 3d 668, 676 (E.D. La. 2016) (same).

that, at the time of the alleged accident, Plaintiff was employed by Nacher and working on a platform owned by McMoran Oil & Gas LLC."[63]

Moreover, "unseaworthiness requires the existence of a vessel."[64] "Fixed offshore platforms are not vessels."[65] Because it is undisputed that Nacher did not own the platform on which Plaintiff was injured and that the platform was not a vessel, Nacher is entitled to judgment as a matter of law on Plaintiff's unseaworthiness claim against it.

C. Request for Attorney's Fees

Nacher requests recovery attorney's fees and costs, but does not cite any law in support of its argument that it is entitled to attorney's fees and costs. Accordingly, the Court denies Nacher's request.

## CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment, filed by Defendant the Nacher Corporation, be and hereby is **GRANTED**.[66] The Nacher Corporation's request for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment as to the McCorpen Defense and Medical Causation, filed by Defendant the Nacher Corporation, be and hereby is **DENIED AS MOOT**.[67]

**New Orleans, Louisiana, this 24th day of January, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[63] R. Doc. 35-15 at 3, ¶ 13; R. Doc. 50-7 at 2, ¶ 13.
[64] *Daniel v. Ergon, Inc.*, 892 F.2d 403, 409 n. 10 (5th Cir. 1990) (citing *Miles v. Melrose*, 882 F.2d 976 (5th Cir. 1989)); *see also Ross v. W&T Offshore, Inc.*, No. CV 17-8689, 2018 WL 6492762, at *7 (E.D. La. Dec. 10, 2018).
[65] *Nolan*, 422 F.2d at 379; *see also Ross*, 2018 WL 6492762, at *7 ("The Fifth Circuit has found that fixed platforms are not vessels for the purposes of Jones Act or unseaworthiness claims.") (citations omitted).
[66] R. Doc. 35.
[67] R. Doc. 64.